FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

DEC 05 2017

MATTHEW J. DYKMAN
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIMINAL NO. 17-CR-01836-MV |
| ) | |
| vs. ) | Count 1: 18 U.S.C. § 371: Conspiracy; |
| ) | |
| **SUSAN K. HARRIS,** ) | Counts 2-11: 18 U.S.C. § 1341: Mail |
| **WILLIAM S. HARRIS,** ) | Fraud; 18 U.S.C. § 2: Aiding and |
| **SHARON A. MOORE**, and ) | Abetting; |
| **CRAIG M. YOUNG,** ) | |
| ) | Counts 12-21: 18 U.S.C. § 1028A: |
| Defendants. ) | Aggravated Identity Theft; 18 U.S.C. § 2: |
| ) | Aiding and Abetting; |
| ) | |
| ) | Counts 22-23: 18 U.S.C. |
| ) | § 1956(a)(1)(B)(i): Money Laundering; |
| ) | 18 U.S.C. § 2: Aiding and Abetting; |
| ) | |
| ) | Counts 24-32: 18 U.S.C. § 1957: Money |
| ) | Laundering; 18 U.S.C. § 2: Aiding and |
| ) | Abetting; |
| ) | |
| ) | Count 33: 18 U.S.C. § 1956(h): |
| ) | Conspiracy to Commit Money |
| ) | Laundering. |

## SUPERSEDING INDICTMENT

The Grand Jury charges:

### Background

1. Ayudando Guardians, Inc.[1] is a New Mexico non-profit corporation that provides guardianship, conservatorship, and financial management services to hundreds of individuals

---

[1] "Ayudando" and "Ayudando Guardians" refers to the various corporate entities affiliated with Ayudando Guardians, including Ayudando Guardians, Inc.; Ayudando Alpha, Inc.; Ayudando Enterprises, Ltd.; Ayudando Advocacy, Inc.; and Ayudando Guardians LLC. While technically Ayudando Guardians, Inc. has merged into Ayudando Alpha, Inc., the defendants hold the company out as Ayudando Guardians, Inc., so that name will be used throughout.

with special needs. Ayudando receives benefits from the Department of Veterans Affairs (VA) and Social Security Administration (SSA) on behalf of many of its clients. For these clients, Ayudando acts as a fiduciary or a representative payee. That is, Ayudando receives government benefits payments on behalf of its clients, pays the clients' expenses, and maintains the balance for the benefit of the clients.

2. Ayudando was formed by **SUSAN K. HARRIS** in 2004. It is primarily owned and operated by **SUSAN K. HARRIS** and **SHARON A. MOORE**. The board of directors consists of **SUSAN K. HARRIS, WILLIAM S. HARRIS, SHARON A. MOORE**, and **CRAIG M. YOUNG** exclusively.

3. As more fully described below, **SUSAN K. HARRIS, WILLIAM S. HARRIS, SHARON A. MOORE**, and **CRAIG M. YOUNG**, have embezzled millions of dollars from their special needs clients and used the money to support lavish lifestyles for **SUSAN K. HARRIS, WILLIAM S. HARRIS, MOORE, YOUNG**, and their families.

Count 1

4. From about November 2006, and continuing to about July 2017, in Bernalillo County, in the District of New Mexico, and elsewhere, the defendants, **SUSAN K. HARRIS, WILLIAM S. HARRIS, SHARON A. MOORE**, and **CRAIG M. YOUNG**, knowingly, unlawfully and willfully combined, conspired, confederated, agreed, and acted interdependently with one another and with others known and unknown to the Grand Jury to commit mail fraud, contrary to 18 U.S.C. § 1341, aggravated identity theft, contrary to 18 U.S.C. § 1028A, and fiduciary misappropriation, contrary to 38 U.S.C. § 6101, and to defraud the United States by cheating the Department of Veterans Affairs out of money and by impairing and obstructing the lawful functions of the Department of Veterans Affairs by deceitful and dishonest means.

Manner and Means

5.      The manner and means by which **SUSAN K. HARRIS, WILLIAM S. HARRIS, SHARON A. MOORE**, and **CRAIG M. YOUNG**, sought to accomplish the objectives of the conspiracy included, among other things, the following:

   a.     Organizing Ayudando to position it as a guardian, conservator, fiduciary, and representative payee for individuals needing assistance with their financial affairs;

   b.     Setting up client trust and company bank accounts in such a way that only **SUSAN K. HARRIS** and **MOORE** could check account balances, monitor account activity, or initiate transfers or payments;

   c.     Transferring client funds from client trust accounts to commingled Ayudando company accounts;

   d.     Maintaining an American Express account which **SUSAN K. HARRIS, WILLIAM S. HARRIS, MOORE, YOUNG**, and their family members used to maintain lavish lifestyles, and paying the account balances with client funds;

   e.     Writing checks from Ayudando company accounts to themselves, to cash, and to cover personal expenses;

   f.     Replenishing depleted client accounts with funds taken from other clients;

   g.     Submitting false and fraudulent statements of account and certifications of deposit to the Department of Veterans Affairs; and

   h.     Forging bank statements and submitting forged and fraudulent bank statements to the Department of Veterans Affairs.

Overt Acts

3. In furtherance of the conspiracy, and to effect the objects thereof, the defendants, and others known and unknown to the Grand Jury, committed and caused to be committed the following acts, among others, in the District of New Mexico, and elsewhere:

a. On or about November 22, 2006, **SUSAN K. HARRIS** incorporated Ayudando Alpha, Inc. as a nonprofit corporation. Corporate documents identified **SUSAN K. HARRIS** as president, **MOORE** as secretary, and **SUSAN K. HARRIS, WILLIAM S. HARRIS, MOORE**, and **YOUNG**, as directors of the company.

b. On or about June 8, 2007, **SUSAN K. HARRIS** incorporated Ayudando Guardians, Inc. as a nonprofit corporation.

c. On or about December 29, 2008, **SUSAN K. HARRIS** merged Ayudando Guardians, Inc. into Ayudando Alpha, Inc.

d. **SUSAN K. HARRIS** wrote numerous checks from the Ayudando client reimbursement account for personal purposes, including the following, each of which constitutes a separate overt act:

| Date | Amount | Payee |
|---|---|---|
| 6/8/11 | $50,950 | Mercedes Benz of Albuquerque |
| 7/5/11 | $5,000 | **SUSAN K. HARRIS** |
| 8/29/11 | $6,000 | **SUSAN K. HARRIS** |
| 12/22/11 | $5,000 | Cash |
| 1/24/12 | $5,500 | **SUSAN K. HARRIS** |
| 3/12/12 | $6,000 | Cash |
| 12/31/12 | $10,894 | **MOORE** |
| 12/31/12 | $61,426 | **SUSAN K. HARRIS** |
| 4/10/13 | $21,852 | All World Travel |
| 4/17/13 | $26,444 | Myers RV Center |
| 12/5/13 | $9,900 | Cash |
| 3/26/14 | $10,827 | French Mortuary |

  e. On or about July 14, 2014, **SUSAN K. HARRIS** and **MOORE** made themselves sole signatory authorities for the Ayudando Guardians, Inc. Petty Cash account.

  f. On or about August 25, 2014, **SUSAN K. HARRIS** and **MOORE** executed a master signature card, making themselves sole signatory authorities for all Ayudando client accounts.

  g. **SUSAN K. HARRIS** wrote numerous checks from the Ayudando petty cash account for personal purposes, including the following, each of which constitutes a separate overt act:

| Date | Amount | Payee |
|---|---|---|
| 12/1/14 | $9,000 | Cash |
| 6/25/15 | $9,200 | T.J.H. |
| 12/1/15 | $8,000 | Cash |
| 12/9/15 | $6,249 | Mesa Spirit RV Resort |
| 1/27/16 | $2,800 | **WILLIAM S. HARRIS** |
| 5/17/16 | $3,000 | **YOUNG** |

  h. **SUSAN K. HARRIS** paid for luxury vacations for herself, her co-conspirators and others, using an American Express account in the name of Ayudando Enterprises, knowing that **MOORE** would pay the charges using client funds, including the following, each of which constitutes a separate overt act:

| Trip Date | Description | Approximate Amount |
|---|---|---|
| January 2013 | Celebrity Cruise, Caribbean isles | $17,724 |
| January 2014 | Celebrity Cruise, Caribbean isles | $20,602 |
| April-May 2014 | Regent Seven Seas Cruise, Florida to Panama to Mexico to San Francisco, CA | $39,773 |
| April 2015 | Final Four basketball vacation, Indianapolis, IN | $16,980 |
| February 2017 | Norwegian Cruise Lines, Hawaii vacation | $19,821 |
| January 2018 (forthcoming) | Celebrity Cruise, Caribbean isles | $5,647 paid as of April 2017 |

i. **MOORE** paid for vacations for herself and others, using an American Express account in the name of Ayudando Enterprises, and paid the charges using client funds, including the following, each of which constitutes a separate overt act:

| Trip Date | Description | Approximate Amount |
|---|---|---|
| July 2015 | Resort and spa vacation, San Diego, CA | $8,958 |
| December 2016 | 13-person vacation to San Diego, CA | $3,479 |

j. **SUSAN K. HARRIS, WILLIAM S. HARRIS, MOORE**, and **YOUNG** paid approximately $20,900 in Ayudando client funds to **WILLIAM S. HARRIS**'s mother, T.J.H., in exchange for a recreational vehicle (RV) which T.J.H. conveyed to **YOUNG** and **WILLIAM S. HARRIS**. The series of payments included the following, each of which constitutes a separate overt act:

| Date | Amount | Payee | Description | Signed By | Deposited By |
|---|---|---|---|---|---|
| 7/29/14 | $1,100 | Cash | Petty Cash check no. 1003 | SUSAN K. HARRIS | YOUNG |
| 7/30/14 | $1,100 | T.J.H. | YOUNG personal check no. 1894 | YOUNG | T.J.H. |
| 7/26/16 | $1,100 | T.J.H. | Petty Cash check no. 3673 | MOORE | WILLIAM S. HARRIS |
| 7/10/17 | $1,100 | T.J.H. | Petty Cash check no. 4246 | MOORE | WILLIAM S. HARRIS |

k. **SUSAN K. HARRIS, WILLIAM S. HARRIS**, and **MOORE** used Ayudando client funds from the Petty Cash account to satisfy a New Mexico state tax liability that **WILLIAM S. HARRIS** incurred while operating a previous and unrelated business. The series of payments included the following, each of which constitutes a separate overt act:

| Date | Amount | Deposited Into | Signed By |
|---|---|---|---|
| 11/20/14 | $4,200 | WILLIAM S. HARRIS personal account | SUSAN K. HARRIS |
| 6/23/15 | $4,200 | WSH LLC account controlled by WILLIAM S. HARRIS | SUSAN K. HARRIS |
| 8/21/15 | $4,200 | WSH LLC account controlled by WILLIAM S. HARRIS | MOORE |

| Date | Amount | Deposited Into | Signed By |
|---|---|---|---|
| 10/22/15 | $3,100 | WILLIAM S. HARRIS personal account | MOORE |

  l. **MOORE** and **SUSAN K. HARRIS** gave $100,000 of Ayudando client funds to Axiom 316 Limited, a developer of software related to fantasy football. These expenditures included the following checks, each of which they converted to cashier's checks prior to delivery so the source of the funds was not apparent to the recipients, and each of which constitutes a separate overt act:

| Date | Amount | Payee | Description | Cardholder/Signer |
|---|---|---|---|---|
| 3/17/14 | $50,000 | Axiom 316 Ltd. | Client Reimbursement Check No. 6459 | MOORE |
| 3/17/14 | $50,000 | Axiom 316 Ltd. | Client Reimbursement Check No. 6460 | MOORE |

  m. The defendants maintained a private box at the University of New Mexico (UNM) basketball arena, commonly referred to as the Pit. From March 2013 through July 2017, they collectively provided approximately $304,863 in Ayudando client funds, via check or American Express, to the UNM Lobo Club, UNM Athletic Department, UNM Catering, and UNM Ticketing Services. These expenditures included the following, each of which constitutes a separate overt act:

| Date | Amount | Payee | Description | Cardholder/Signer |
|---|---|---|---|---|
| 3/18/13 | $10,000 | UNM Athletic Department | Client Reimbursement Check No. 5124 | SUSAN K. HARRIS |
| 6/30/14 | $10,000 | UNM Ticketing | American Express charge | SUSAN K. HARRIS |
| 2/28/16 | $5,000 | UNM Lobo Club | American Express charge | SUSAN K. HARRIS |
| 2/29/16 | $5,000 | UNM Lobo Club | American Express charge | MOORE |

  n. Between about October 2010 and July 2017, **YOUNG, SUSAN K. HARRIS**, and **MOORE** paid **YOUNG**'s personal mortgage through a series of 83 checks totaling approximately $206,970 from Ayudando common accounts to Bank of Albuquerque or Bank of Oklahoma, including the following, each of which constitutes a separate overt act:

7

| Signed Date | Amount | Check No. | Ayudando Account | Signed By |
|---|---|---|---|---|
| 10/18/10 | $28,043 | 2583 | Client Reimbursement | **MOORE** |
| 11/3/10 | $2,250 | 1266 | Rep Payee Services | **YOUNG** |
| 11/30/10 | $2,250 | 2684 | Client Reimbursement | **YOUNG** |
| 12/23/13 | $2,200 | 6188 | Client Reimbursement | **SUSAN K. HARRIS** |
| 6/30/17 | $2,200 | 3111 | Petty Cash | **SUSAN K. HARRIS** |

   o. In March 2017, **MOORE, SUSAN K. HARRIS** and **WILLIAM S. HARRIS** applied for a $250,000 business loan from New Mexico Bank & Trust, supposedly to expand the Ayudando Guardians business but actually to "pay back" clients from whom they had taken money without authorization.

   p. **MOORE** submitted numerous false and fraudulent documents to VA, each falsely representing that client account balances were substantially higher than they actually were, including the following, each of which constitutes a separate overt act:

| Signed Date | Delivered Date | Client | Balance As Of | Amount Claimed to be in Client Account | Actual Client Account Value |
|---|---|---|---|---|---|
| 1/29/16 | 2/1/16 | T.P. | 11/30/15 | $156,264 | $45,676 |
| 2/9/16 | 4/11/16 | P.I | 11/30/15 | $141,983 | -$3,067 |
| 3/12/16 | 3/18/16 | E.L. | 12/31/15 | $121,763 | $4,262 |
| 6/1/16 | 8/29/16 | C.H. | 4/30/16 | $483,151 | $2,842 |
| 6/14/16 | 6/17/16 | J.K. | 4/30/16 | $140,831 | $0 |
| 6/17/16 | 8/30/16 | A.G. | 5/31/16 | $161,469 | $6,406 |
| 8/30/16 | 9/7/16 | P.B. | 6/30/16 | $124,807 | $3,028 |
| 9/21/16 | 10/13/16 | J.S. | 7/31/16 | $131,390 | $5,289 |
| 11/8/16 | 10/25/16 | G.C. | 8/31/16 | $176,099 | $4,527 |
| 11/11/16 | 11/18/16 | W.S. | 9/30/16 | $144,347 | $3,318 |

  In violation of 18 U.S.C. § 371.

Counts 2-11

  1. From about January 2010, and continuing to about July 2017, in Bernalillo County, in the District of New Mexico, and elsewhere, the defendants, **SUSAN K. HARRIS, WILLIAM S. HARRIS, SHARON A. MOORE,** and **CRAIG M. YOUNG**, with intent to defraud, knowingly and unlawfully devised and intended to devise a scheme and artifice to

defraud by means of materially false and fraudulent pretenses and representations, and for the purpose of executing and in order to effect the scheme and artifice to defraud and to obtain money and property by way of materially false and fraudulent pretenses, representations, and promises, the defendants caused documents to be delivered by the United States Postal Service and a commercial interstate carrier, thereby affecting a financial institution.

The Scheme and Artifice

2.  The defendants' scheme and artifice consisted of fraudulently extracting money from client accounts and disbursing that money to the defendants.

3.  It was further part of the scheme and artifice that the defendants organized Ayudando to position it as a guardian, conservator, fiduciary, and representative payee for individuals needing assistance with their financial affairs.

4.  It was further part of the scheme and artifice that the defendants set up client trust and company bank accounts in such a way that only **SUSAN K. HARRIS** and **MOORE** could check account balances, monitor account activity, or initiate transfers or payments.

5.  It was further part of the scheme and artifice that the defendants transferred money from client trust accounts to the Ayudando "Petty Cash" and "Client Reimbursement" commingled accounts.

6.  It was further part of the scheme and artifice that the defendants maintained an American Express account with cards issued to the defendants and several of their family members. The defendants and their family members paid for extensive personal charges on the cards, including luxury vacations, vehicles and more. The defendants paid off the American Express account each month with money from the Petty Cash and Client Reimbursement

accounts. Between 2010 and 2017, the defendants diverted funds from the Petty Cash and Client Reimbursement accounts to the American Express account totaling more than $4 million.

      7.     It was further part of the scheme and artifice that the defendants forged and submitted false and fraudulent documents to the Department of Veterans Affairs. VA requires its fiduciaries to submit annual statements of accounts for each client, describing each client's money received, money spent, and assets, and including bank statements in support. The defendants created materially false and fraudulent statements of account, certifications of deposit, and bank statements, which substantially overstated the funds available in client accounts, and submitted them to VA to conceal and continue the defendants' theft from client accounts.

      8.     It was further part of the scheme and artifice that the defendants commingled their clients' funds in the Petty Cash and Client Reimbursement accounts, despite VA requirements that each clients' funds be kept in separate accounts.

      9.     It was further part of the scheme and artifice that the defendants concealed their theft from some clients' accounts by replacing the missing money with funds taken from other clients.

Executions of the Scheme

      10.    On or about the dates listed below, for the purpose of executing and in order to effect the scheme and artifice to defraud and to obtain money and property by way of materially false and fraudulent pretenses, representations, and promises, the defendants caused the delivery by the United States Postal Service and a commercial interstate carrier to the Department of Veterans Affairs, 550 Foothill Dr., P.O. Box 58086, Salt Lake City, UT, 84158, according to the

accounts. Between 2010 and 2017, the defendants diverted funds from the Petty Cash and Client Reimbursement accounts to the American Express account totaling more than $4 million.

7. It was further part of the scheme and artifice that the defendants forged and submitted false and fraudulent documents to the Department of Veterans Affairs. VA requires its fiduciaries to submit annual statements of accounts for each client, describing each client's money received, money spent, and assets, and including bank statements in support. The defendants created materially false and fraudulent statements of account, certifications of deposit, and bank statements, which substantially overstated the funds available in client accounts, and submitted them to VA to conceal and continue the defendants' theft from client accounts.

8. It was further part of the scheme and artifice that the defendants commingled their clients' funds in the Petty Cash and Client Reimbursement accounts, despite VA requirements that each clients' funds be kept in separate accounts.

9. It was further part of the scheme and artifice that the defendants concealed their theft from some clients' accounts by replacing the missing money with funds taken from other clients.

### Executions of the Scheme

10. On or about the dates listed below, for the purpose of executing and in order to effect the scheme and artifice to defraud and to obtain money and property by way of materially false and fraudulent pretenses, representations, and promises, the defendants caused the delivery by the United States Postal Service and a commercial interstate carrier to the Department of Veterans Affairs, 550 Foothill Dr., P.O. Box 58086, Salt Lake City, UT, 84158, according to the

directions thereon, of documents, specifically statements of account, certifications of deposit, and bank statements, thereby affecting a financial institution, as approximately described below:

| Count | Signed Date | Delivered Date | Client | Balance As Of | Amount Claimed to be in Client Account | Actual Client Account Value |
|---|---|---|---|---|---|---|
| 2 | 1/29/16 | 2/1/16 | T.P. | 11/30/15 | $156,264 | $45,676 |
| 3 | 2/9/16 | 4/11/16 | P.I | 11/30/15 | $141,983 | -$3,067 |
| 4 | 3/12/16 | 3/18/16 | E.L. | 12/31/15 | $121,763 | $4,262 |
| 5 | 6/1/16 | 8/29/16 | C.H. | 4/30/16 | $483,151 | $2,842 |
| 6 | 6/14/16 | 6/17/16 | J.K. | 4/30/16 | $140,831 | $0 |
| 7 | 6/17/16 | 8/30/16 | A.G. | 5/31/16 | $161,469 | $6,406 |
| 8 | 8/30/16 | 9/7/16 | P.B. | 6/30/16 | $124,807 | $3,028 |
| 9 | 9/21/16 | 10/13/16 | J.S. | 7/31/16 | $131,390 | $5,289 |
| 10 | 11/8/16 | 10/25/16 | G.C. | 8/31/16 | $176,099 | $4,527 |
| 11 | 11/11/16 | 11/18/16 | W.S. | 9/30/16 | $144,347 | $3,318 |

In violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2.

## Counts 12-21

1. On or about the dates listed below, in the District of New Mexico, and elsewhere, the defendants, **SUSAN K. HARRIS** and **SHARON A. MOORE** did knowingly use, possess and transfer, without lawful authority, a means of identification of another person; that is, the defendants used, possessed and transferred clients' names, dates of birth, Social Security Numbers, and Department of Veterans Affairs file numbers, during and in relation to felony violations of 18 U.S.C. § 1341, as described below.

| Count | Approximate Date | Victim | Felony Violation Described in Count |
|---|---|---|---|
| 12 | 1/29/16 | T.P. | 2 |
| 13 | 2/9/16 | P.I | 3 |
| 14 | 3/12/16 | E.L. | 4 |
| 15 | 6/1/16 | C.H. | 5 |
| 16 | 6/14/16 | J.K. | 6 |
| 17 | 6/17/16 | A.G. | 7 |
| 18 | 8/30/16 | P.B. | 8 |
| 19 | 9/21/16 | J.S. | 9 |
| 20 | 11/8/16 | G.C. | 10 |
| 21 | 11/11/16 | W.S. | 11 |

In violation of 18 U.S.C. § 1028A(a)(1) and 18 U.S.C. § 2.

Counts 22-23

1.      On or about the dates set forth below, in the District of New Mexico, and elsewhere, the defendants, **SUSAN K. HARRIS** and **SHARON A. MOORE**, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, namely mail fraud, contrary to 18 U.S.C. § 1341, knowing that the transaction was designed in whole and in part to conceal and disguise the source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, that is, mail fraud, contrary to 18 U.S.C. § 1341, as described below:

| Date | Amount | Payee | Description | Cardholder/Signer |
|---|---|---|---|---|
| 2/28/16 | $5,000 | UNM Lobo Club | American Express charge | **SUSAN K. HARRIS** |
| 2/29/16 | $5,000 | UNM Lobo Club | American Express charge | **MOORE** |

In violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C. § 2.

Counts 24-32

1.      On or about the dates set forth below, in the District of New Mexico, and elsewhere, the defendants, **SUSAN K. HARRIS, WILLIAM S. HARRIS, SHARON A. MOORE**, and **CRAIG M. YOUNG**, did knowingly engage and attempt to engage in the following monetary transactions by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the withdrawal and transfer of U.S. currency, such property having been derived from a specified unlawful activity, that is, mail fraud, contrary to 18 U.S.C. § 1341, as described below:

12

| Count | Date | Description | Amount |
|---|---|---|---|
| 24 | 4/8/13 | Check #5242 from Client Reimbursement Account to American Express | $51,388 |
| 25 | 11/7/13 | Check #5994 from Client Reimbursement Account to American Express | $86,991 |
| 26 | 3/17/14 | Check #6459 from Client Reimbursement Account to Axiom 316 Limited | $50,000 |
| 27 | 3/17/14 | Check #6460 from Client Reimbursement Account to Axiom 316 Limited | $50,000 |
| 28 | 5/12/14 | Check #6660 from Client Reimbursement Account to American Express | $50,124 |
| 29 | 12/14/15 | Check #2951 from Petty Cash Account to American Express | $66,823 |
| 30 | 3/14/16 | Check #3360 from Petty Cash Account to American Express | $54,976 |
| 31 | 4/13/16 | Check #3426 from Petty Cash Account to American Express | $73,330 |
| 32 | 5/12/16 | Check #3484 from Petty Cash Account to American Express | $63,967 |

In violation of 18 U.S.C. § 1957 and 18 U.S.C. § 2.

## Count 33

1.  From on or about November 2006, and continuing to about July 2017, in the District of New Mexico, and elsewhere, the defendants, **SUSAN K. HARRIS, WILLIAM S. HARRIS, SHARON A. MOORE**, and **CRAIG M. YOUNG**, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and 1957, to wit:

    a. to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, mail fraud, contrary to 18 U.S.C. § 1341, knowing that the transactions were designed in whole or in part to conceal and disguise the source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting

to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, that is, mail fraud, contrary to 18 U.S.C. § 1341, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

    b.  to knowingly engage and attempt to engage, in monetary transactions by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, U.S. currency, such property having been derived from a specified unlawful activity, that is, mail fraud, contrary to 18 U.S.C. § 1341, in violation of 18 U.S.C. § 1957.

## Manner and Means

2. The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

3. It was part of the conspiracy and scheme to defraud that the defendants and their co-conspirators, having been entrusted with funds on behalf of their special needs clients, transferred client funds into commingled Ayudando bank accounts, including the client reimbursement account and the petty cash account, and thereby defrauded their clients and the Department of Veterans Affairs and converted and embezzled those funds to their own use.

4. It was further part of the conspiracy and scheme to defraud that the defendants and their co-conspirators wrote, endorsed and deposited checks from Ayudando accounts to themselves, to cash, and for personal expenses.

5. It was further part of the conspiracy and scheme to defraud that the defendants and their co-conspirators maintained a joint American Express account and used that account to pay for personal charges, including luxury vacations, vehicles and more.

6.      It was further part of the conspiracy and scheme to defraud that the defendants and their co-conspirators, having converted and embezzled funds from their clients by way of a scheme and artifice to defraud, transferred the proceeds of the fraud to pay off the American Express account on a monthly basis, in increments each exceeding $10,000, totaling more than approximately $4 million.

In violation of 18 U.S.C. § 1956(h).

### Forfeiture Allegation 1

Counts 1–11 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461.

Upon conviction of any offense in violation of 18 U.S.C. § 1341, the defendants, **SUSAN K. HARRIS, WILLIAM S. HARRIS, SHARON A. MOORE**, and **CRAIG M. YOUNG**, shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461, all property which constitutes or is derived from proceeds traceable to the commission of the offense.

The property to be forfeited to the United States includes but is not limited to the following:

REAL PROPERTY:

>   9120 Wimbledon Dr NE, Albuquerque NM 87111
>   Lot numbered Fifty-six-B (56-B) of Wimbledon West at Tanoan, as the same is shown and designated on the replat of Lots 1 thru 7 4 of said subdivision, filed in the Office of the County Clerk of Bernalillo County, New Mexico, on September 8, 1983, in Plat Book C22, folio 20.
>
>   9205 Preston Trail NE, Albuquerque NM
>   Lot numbered Nineteen (19), of Cypress Point at Tanoan Subdivision, as the same is shown and designated on the plat entitled, "Subdivision Map for Cypress Point at Tanoan

Subdivision, lbuquerque, New Mexico", filed in the office of the County Clerk of Bernalillo County, New Mexico on June 12, 1987, in Plat Book C33, Folio 181.

<u>635 Minaret Dr SW, Albuquerque NM 87121</u>
Lot numbered Thirty-nine-P1 (39-P1) of the Plat for SAN YGNACIO PLACE, within the Town of Atrisco Grant, projected Section 28, Township 10 North, Range 2 East, New Mexico Principal Meridian, City of Albuquerque, Bernalillo County, New Mexico, as the same is shown and designated on the plat thereof, filed in the office of the County Clerk of Bernalillo County, New Mexico, on May 16, 2002, in Plat Book 2002C, page 171.

<u>11025 Bridgepointe Ct NE, Albuquerque NM 87111</u>
Lot numbered eighteen (18) of Kingswood at Tanoan, Albuquerque, New Mexico, as the same is shown and designated on the plat thereof, filed in the office of the County Clerk of Bernalillo County, New Mexico, on November 19, 1991, in Plat Book 91C, page 257.

<u>6621 Cypress Point Way NE, Albuquerque NM 87111</u>
Lot numbered thirty-four (34) of Cypress Point at Tanoan Subdivions, as the same is shown and designated on the plat entitled, "Subdivision Map for Cypress Point at Tanoan Subdivision, Albuquerque, New Mexico," filed in the office of the County Clerk of Bernalillo County, New Mexico, on June 12, 1987, in Plat Book C33, page 181.

<u>VEHICLES:</u>

<u>A 2018 K-Z RV DURANGO GOLD 5TH WHEEL</u>, VIN: 4EZFV3823J6057874

<u>A 2014 Jeep Wrangler</u>, VIN: 1C4BJWEG2EL233799

<u>MONEY JUDGMENT:</u>

A sum of money, representing all property which constitutes or is derived from proceeds traceable to the commission of the offense.

<u>SUBSTITUTE ASSETS:</u>

If any of the above-described forfeitable property, as a result of any act or omission of the Defendant:

    A. Cannot be located upon exercise of due diligence;

    B. Has been transferred or sold to, or deposited with, a third person;

    C. Has been placed beyond the jurisdiction of the Court;

    D. Has been substantially diminished in value;

    E. Has been commingled with other property which cannot be subdivided without difficulty;

It is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

Forfeiture Allegation 2

Counts 22 through 33 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to 18 U.S.C. § 982(a)(1).

Upon conviction of any offense in violation of 18 U.S.C. § 1956 or 18 U.S.C. § 1957, the defendants, **SUSAN K. HARRIS, WILLIAM S. HARRIS, SHARON A. MOORE**, and **CRAIG M. YOUNG**, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real or personal, involved in the offense and any property traceable thereto.

The property to be forfeited to the United States includes but is not limited: to all interest in and assets of, and any and all funds in accounts owned, held, controlled, maintained or held in trust for third parties by, the following:

    **AYUDANDO ADVOCACY, INC.**
    **AYUDANDO ALPHA, INC.**
    **AYUDANDO ENTERPRISES, LTD.**
    **AYUDANDO GUARDIANS LLC**
    **AYUDANDO GUARDIANS, INC.**

REAL PROPERTY:

    <u>9120 Wimbledon Dr NE, Albuquerque NM 87111</u>
    Lot numbered Fifty-six-B (56-B) of Wimbledon West at Tanoan, as the same is shown and designated on the replat of Lots 1 thru 7 4 of said subdivision, filed in the Office of

the County Clerk of Bernalillo County, New Mexico, on September 8, 1983, in Plat Book C22, folio 20.

9205 Preston Trail NE, Albuquerque NM
Lot numbered Nineteen (19), of Cypress Point at Tanoan Subdivision, as the same is shown and designated on the plat entitled, "Subdivision Map for Cypress Point at Tanoan Subdivision, lbuquerque, New Mexico", filed in the office of the County Clerk of Bernalillo County, New Mexico on June 12, 1987, in Plat Book C33, Folio 181.

635 Minaret Dr SW, Albuquerque NM 87121
Lot numbered Thirty-nine-P1 (39-P1) of the Plat for SAN YGNACIO PLACE, within the Town of Atrisco Grant, projected Section 28, Township 10 North, Range 2 East, New Mexico Principal Meridian, City of Albuquerque, Bernalillo County, New Mexico, as the same is shown and designated on the plat thereof, filed in the office of the County Clerk of Bernalillo County, New Mexico, on May 16, 2002, in Plat Book 2002C, page 171.

11025 Bridgepointe Ct NE, Albuquerque NM 87111
Lot numbered eighteen (18) of Kingswood at Tanoan, Albuquerque, New Mexico, as the same is shown and designated on the plat thereof, filed in the office of the County Clerk of Bernalillo County, New Mexico, on November 19, 1991, in Plat Book 91C, page 257.

6621 Cypress Point Way NE, Albuquerque NM 87111
Lot numbered thirty-four (34) of Cypress Point at Tanoan Subdivions, as the same is shown and designated on the plat entitled, "Subdivision Map for Cypress Point at Tanoan Subdivision, Albuquerque, New Mexico," filed in the office of the County Clerk of Bernalillo County, New Mexico, on June 12, 1987, in Plat Book C33, page 181.

VEHICLES:

   A 2018 K-Z RV DURANGO GOLD 5TH WHEEL, VIN: 4EZFV3823J6057874

   A 2014 Jeep Wrangler, VIN: 1C4BJWEG2EL233799

MONEY JUDGMENT:

   A sum of money, representing all property, real or personal, involved in the offense and any property traceable thereto.

SUBSTITUTE ASSETS:

   If any of the above-described forfeitable property, as a result of any act or omission of the Defendant:

A. Cannot be located upon exercise of due diligence;

B. Has been transferred or sold to, or deposited with, a third person;

C. Has been placed beyond the jurisdiction of the Court;

D. Has been substantially diminished in value;

E. Has been commingled with other property which cannot be subdivided without difficulty;

It is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

A TRUE BILL:

_____/s/_____
FOREPERSON OF THE GRAND JURY

*[signature]*
Assistant United States Attorney
*[signature]* 12/4/2017 1:06 PM